UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SYLVESTER ROLLINS                                    CIVIL ACTION

versus                                               NO. 10-1994

BURL CAIN, WARDEN                                    SECTION: "S" (3)

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Sylvester Rollins, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On October 23, 1973, he was convicted of second degree murder

under Louisiana law, and he was subsequently sentenced to a term of life imprisonment.  On October

28, 1974, the Louisiana Supreme Court affirmed that conviction and sentence.[1]

Throughout the next three decades, petitioner repeatedly sought post-conviction relief

in the state courts on various grounds.  It is unnecessary to recount those efforts in detail for the

purposes of this proceeding.  Suffice it to say, those efforts met with no success, including but not

limited to decisions of the Louisiana Supreme Court denying relief in 1981,[2] 1995,[3] 1996,[4] 1999,[5]

2002,[6] 2004,[7] 2005,[8] and 2008.[9]

---

[1] State v. Rollins, 302 So.2d 288 (La. 1974) (No. 54,971); State Rec., Vol. I of VII.

[2] State ex rel. Rollins v. Blackburn, 397 So.2d 814 (La. 1981) (No. 80-KH-2996).

[3] State ex rel. Rollins v. Whitley, 653 So.2d 558 (La. 1995) (No. 93-KH-0787); State Rec., Vol. VI of VII.

[4] State v. Rollins, 681 So.2d 377 (La. 1996) (No. 96-KK-1879); State Rec., Vol. VI of VII.

[5] State ex rel. Rollins v. State, 747 So.2d 1104 (La. 1999) (No. 99-KH-1341); State Rec., Vol. IV of VII.

[6] State ex rel. Rollins v. State, 808 So.2d 329 (La. 2002) (No. 2001-KH-1414); State Rec., Vol. IV of VII.

[7] State ex rel. Rollins v. State, 864 So.2d 128 (La. 2004) (No. 2003-KP-1050); State Rec., Vol. I of VII.

[8] State ex rel. Rollins v. State, 908 So.2d 671 (La. 2005) (No. 2004-KH-2788); State Rec., Vol. III of VII.

[9] State ex rel. Rollins v. State, 992 So.2d 980 (La. 2008) (No. 2008-KH-0028); State Rec., Vol. III of VII.

Petitioner likewise repeatedly sought relief in the federal courts.  Here, too, he had no success, with relief being denied in 1975,[10] 1983,[11] and 1999.[12]

However, on June 11, 2010, the United States Fifth Circuit Court of Appeals granted petitioner authorization to file another federal *habeas corpus* petition.[13]  Therefore, on July 6, 2010, he filed the instant petition asserting the following claims:

1.   The state courts deprived petitioner of his right to equal protection by erroneously applying Louisiana's statute of limitations to his state post-conviction application;

2.   Newly discovered evidence proves that petitioner acted in self defense; and

3.   Petitioner received ineffective assistance of counsel.

<u>Facts</u>

In granting petitioner leave to file the instant petition, the United States Fifth Circuit Court of Appeals summarized the facts of this case as follows:

In 1973, Rollins was driving in New Orleans when he almost had an automobile accident with [Leslie] Morris.  Immediately after the near-accident, Rollins and Morris moved their vehicles to the side of the road and argued.  The argument escalated, resulting in Rollins fatally shooting Morris.

---

[10] <u>Rollins v. Louisiana</u>, No. 75-178 (E.D. La. April 14, 1975); State Rec., Vol. I of VII.

[11] <u>Rollins v. Maggio</u>, 711 F.2d 592 (5th Cir. 1983).

[12] <u>Rollins v. Cain</u>, No. 98-30320, 1999 WL 500692 (5th Cir. June 18, 1999).

[13] <u>*In re* Rollins</u>, No. 09-30837, 2010 WL 2465090 (5th Cir. June 11, 2010).

At trial, Rollins testified that he shot Morris in self-defense after Morris drew a gun from under his seat.  The prosecution called three witnesses:  Morris's wife, who had been in the car with him; and Morris's friends August Fueselier and Curtis Austin, who worked at a nearby auto repair shop. Morris's wife testified that Morris did not own a gun and did not reach under his seat.  Fueselier and Austin contradicted the testimony of Morris's wife in one key respect:  they both testified that Morris reached under his seat before the shooting. However, both said that they did not know if Morris tried to grab a gun, and Austin explained that he was on the other side of the car from Morris and did not have a clear view.

According to the police report, Joseph Brion was the sole passenger in Rollins's car at the time of the shooting.  Brion apparently told the police that he saw Morris reach under his seat prior to the shooting and stand up with something in his hand, but there is no indication that Brion testified at Rollins's trial.  According to Rollins, his counsel called no witnesses on his behalf and informed him that it would have been a waste of time to search for other witnesses because the police had not been able to locate any.  Indeed, the police report for the investigation stated that "[a]ttempts were also made to locate any other witnesses in the neighborhood to no avail."[14]

The Court of Appeals also summarized the newly discovered evidence on which the instant petition is based:

In 2000, Rollins's wife was traveling by van to visit Rollins in prison when she began talking with another passenger, Jane Marie Lewis.  After hearing the details of Rollins's conviction, Lewis recalled witnessing the shooting from the porch of her house, which was located directly in front of the crime scene.  Although the police report stated that the investigating officers had not found a firearm or any other weapon on Morris or in his vehicle, Lewis told Rollins's wife that she saw Morris draw a gun from under his seat just before being shot.  According to Lewis, the female passenger in Morris's vehicle – presumably, his wife – hid Morris's gun before police arrived.

After learning of Lewis's account, Rollins obtained a copy of the prosecutor's files, which contained a crime-scene photograph that

---

[14] *In re* Rollins, No. 09-30837, 2010 WL 2465090, at *1 (5th Cir. June 11, 2010).

showed a handful of bystanders.  This photograph had not been entered into evidence at trial and presumably had never been seen by Rollins's counsel.  Apparently, Lewis and her sons are visible in the photograph, standing on the porch of their home just beyond the police tape that cordoned off the crime scene.

In 2002, Lewis and her son, Percy Gray, signed affidavits describing their recollections of the shooting.  Both said that Morris retrieved a gun from under his car seat just before Rollins shot him.  Gray also stated that a woman took Morris's gun from his car after the shooting.

Rollins filed a petition for post-conviction relief in state court.  The state district court conducted an evidentiary hearing, where Lewis was the only witness. She repeated her affidavit testimony that Morris drew a gun from under his car seat before Rollins drew his gun.  She also testified that the woman in the car with Morris hid Morris's gun after the shooting.[15]

<u>Timeliness</u>

Before turning to petitioner's claims, the Court notes that the state argues that petitioner's federal application is untimely.  The undersigned agrees, although not for the reasons argued by the state.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for the filing of federal *habeas corpus* applications.  The method for calculating a petitioner's one-year period is set forth in 28 U.S.C. § 2244(d), which provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[15] <u>Id</u>. at 2 (footnotes omitted).

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Because the United States Fifth Circuit Court of Appeals has given petitioner permission to file this successive application challenging his conviction from thirty-seven years ago, this Court assumes that Court of Appeals believed that the petition might be timely under § 2244(d)(1)(D) based on his "newly discovered evidence." However, this Court, having benefit of the state court record unavailable to the Court of Appeals, finds that the application is untimely even under that provision.

The "newly discovered evidence" at issue consists of two previously unknown eyewitnesses, Jane Marie Lewis and Percy Gray. As noted, petitioner's wife learned of these eyewitnesses when she met Lewis on a bus on an unknown date in 2000.[16] Therefore, giving petitioner the benefit of every doubt, the factual predicate of his claim was discovered no later than December 31, 2000. Accordingly, under even the most generous calculations, his limitations period under § 2244(d)(1)(D) would have commenced on that date and expired one year later, unless that deadline was extended by tolling.

_____

[16] Rec. Doc. 1-1, p. 4; see also State Rec., Vol. III of VII, transcript of February 25, 2003, pp. 15-16.

The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court.  28 U.S.C. § 2244(d)(2).  It is evident that between 2000 and 2008, petitioner had several post-conviction applications pending in the state courts.  Because not all of the applicable filing dates can be ascertained from the state court record, this Court is unable to determine how many days, if any, of the limitations period elapsed between December 31, 2000, and September 26, 2008, the date petitioner's last state post-conviction application was denied by the Louisiana Supreme Court.[17]  Nevertheless, even in the unlikely event that none of the limitations period elapsed prior to September 26, 2008, petitioner's federal application is still untimely because far more than one year elapsed untolled between that date and the date the instant application was filed.

The record reflects that petitioner filed no state applications after September 26, 2008, which would have entitled him to further statutory tolling.  His only filing within one year of that date was his "Request for Permission to File Second and Successive Writ of Habeas Corpus Pursuant to Title 28 U.S.C. 2254 and Incorporated Memorandum," which was filed with the United States Fifth Circuit Court of Appeals on or about September 4, 2009.  However, that *federal* motion obviously is not a *state* application for post-conviction relief or other collateral review so as to trigger tolling under § 2244(d)(2).  See Duncan v. Walker, 533 U.S. 167, 181-82 (2001) (a federal filing is not an "application for State post-conviction or other collateral review" within the meaning

---

[17] State *ex rel.* Rollins v. State, 992 So.2d 980 (La. 2008) (No. 2008-KH-0028); State Rec., Vol. III of VII.

of § 2244(d)(2)).  Moreover, the Fifth Circuit has expressly held that the filing of such a motion within the federal limitations period does not directly affect the timeliness of a related, subsequently filed federal *habeas corpus* petition.  <u>Fierro v. Cockrell</u>, 294 F.3d 674 (5th Cir. 2002).[18]

That said, this Court's inquiry is not ended, because a petitioner can also be granted equitable tolling.  <u>See</u> <u>Holland v. Florida</u>, 130 S.Ct. 2549, 2560 (2010).  However, "[a] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  <u>Id</u>. at 2562 (internal quotation marks omitted); <u>see also</u> <u>Davis v. Johnson</u>, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances").  A petitioner bears the burden of proof to establish entitlement to equitable tolling.  <u>Alexander v. Cockrell</u>, 294 F.3d 626, 629 (5th Cir. 2002).  In the instant case, petitioner has brought forth no evidence demonstrating that he is entitled to equitable tolling.

Concerning this issue, the Court also expressly finds that although petitioner's federal limitations period expired while his motion to file a successive application was still pending before the United States Fifth Circuit Court of Appeals, that fact does not warrant equitable tolling.  In

---

[18] In <u>Fierro</u>, the Fifth Circuit explained:

> Although this issue is one of first impression, both the language of the AEDPA and analogous caselaw compel the conclusion that a motion for authorization to file a successive petition is not itself an "application for a writ of habeas corpus."  As a consequence, the filing of such a motion does not satisfy the one-year statute of limitations under the AEDPA.

<u>Id</u>. at 680 (footnote omitted).

Fierro, the Fifth Circuit indicated that, in some circumstances, perhaps "the filing of such a motion in a court of appeals may equitably toll the statute during the pendency of the motion." Fierro, 294 F.3d at 681 n.12.  However, the instant case is not such a circumstance.  As noted previously, a petitioner is entitled to equitable tolling only if "he has been pursuing his rights diligently." Holland, 130 S.Ct. at 2562.  The required diligence has not been shown here.  In the instant case, the Louisiana Supreme Court denied relief on September 26, 2008, and petitioner then waited over *eleven months*, almost the entirety of the federal limitations period, before filing his motion in the Fifth Circuit on September 4, 2009.  If he had filed that motion with diligence and alacrity after the Louisiana Supreme Court's ruling, his limitations period would not have expired while his motion was pending, and he would have had ample time to timely file his federal *habeas corpus* application in this Court.  Therefore, it was his last-minute filing of that motion, a fault attributable solely to petitioner, which caused the untimeliness of the instant petition.  Simply put, petitioner failed to act with diligence, and "[e]quity is not intended for those who sleep on their rights." Fisher v. Johnson, 174 F.3d 710, 715 (5th Cir. 1999).

Because petitioner is not entitled to further statutory tolling, and because he has not established grounds for equitable tolling, his federal application for *habeas corpus* relief had to be

filed on or before September 28, 2009,[19] in order to be timely.  His federal application was not filed

July 6, 2010,[20] and it was therefore untimely and should be dismissed on that basis.

Nevertheless, out of an abundance of caution, the Court additionally notes that

petitioner's claims should also be dismissed on the alternative ground that they have no merit for

the following reasons.[21]

<u>Equal Protection Claim</u>

Petitioner's first claim is that the state courts violated his right to equal protection by

erroneously invoking La.C.Cr.P. art. 930.8, which sets forth the prescriptive period for seeking post-

conviction relief, to deny relief in the state post-conviction proceedings.  However, such claims

regarding alleged errors in state post-conviction proceedings simply are not cognizable in a federal

---

[19] Because September 26, 2009, fell on a Saturday, the limitations period was extended through the following Monday.  <u>See</u> <u>Flanagan v. Johnson</u>, 154 F.3d 196, 202 (5th Cir. 1998) ("We hold that [Fed.R.Civ.P.] 6(a) applies to the computation of the one year limitation period in § 2244(d) of AEDPA."); Fed.R.Civ.P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, a legal holiday, or a day when the clerk's office is inaccessible, the period runs until the end of the next day that is not one of those days).

[20] "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court."  <u>Roberts v. Cockrell</u>, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner signed his federal application on July 6, 2010; therefore, that is the earliest date it could have been submitted to prison officials for mailing.

[21] The Court notes that the state also argues that petitioner has not exhausted his state court remedies.  However, the Court need not, and does not, address that contention.  A federal court has the authority to deny *habeas* claims on the merits, regardless of whether petitioner exhausted state court remedies and whether exhaustion is waived by the state.  28 U.S.C. § 2254(b)(2); <u>Jones v. Jones</u>, 163 F.3d 285, 299 (5th Cir. 1998); <u>Woods v. Cain</u>, Civil Action No. 06-2032, 2008 WL 2067002, at *8 n.8 (E.D. La. May 13, 2008).  Because petitioner's application is untimely and because his claims clearly have no merit, the undersigned finds the better course is simply to consider and reject the claims with prejudice on those bases in the interest of judicial economy.

*habeas corpus* proceeding.  Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir. 1995) ("[E]rrors in a state habeas proceeding cannot serve as a basis for setting aside a valid original conviction.  An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself." (quotation marks omitted)); see also Morris v. Cain, 186 F.3d 581, 585 n.6 (5th Cir. 1999) ("[O]ur circuit precedent makes abundantly clear that errors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief.  Rather, we must find constitutional error at the trial or direct review level in order to issue the writ." (citations omitted)); Smith v. Terrell, Civ. Action No. 09-3791, 2009 WL 4799190, at *3 (E.D. La. Dec. 17, 2009); Odom v. Wheat, Civ. Action No. 09-3028, 2009 WL 3199178, at *8 (E.D. La. Sept. 30, 2009); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *6 (E.D. La. Dec. 11, 2008); Turner v. Carlton, No. 2:05-CV-102, 2008 WL 2169519, at *2 (E.D. Tenn. May 22, 2008); Campbell v. Cain, Civ. Action No. 06-3983, 2007 WL 2363149, at *2 n.23 (E.D. La. Aug. 15, 2007).

### Claim Based on Newly Discovered Evidence

Petitioner next claims that the two new eyewitnesses show that he acted in self defense and therefore is not guilty of the crime of which he stands convicted.  However, such claims of actual innocence are likewise not cognizable in federal *habeas corpus* proceedings.  As Justice Holmes noted long ago, what a federal *habeas* court has "to deal with is *not* the petitioner['s] innocence or guilt but *solely* the question whether [his] constitutional rights have been preserved." Moore v. Dempsey, 261 U.S. 86, 87-88 (1923) (emphasis added).  The Supreme Court reiterated that view seventy years later, noting:

> Claims of actual innocence based on newly discovered evidence have *never* been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. ... This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – *not* to correct errors of fact.

Herrera v. Collins, 506 U.S. 390, 400 (1993) (emphasis added); see also Kincy v. Dretke, 92 Fed. App'x 87, 92 (5th Cir. 2004); Lucas v. Johnson, 132 F.3d 1069, 1074 (5th Cir. 1998); Newman v. Cain, Civ. Action No. 09-4445, 2010 WL 1817771, at *7-8 (E.D. La. Apr. 12, 2010), adopted, 2010 WL 1838064 (E.D. La. May 4, 2010); Bolton v. Cooper, Civ. Action No. 07-626, 2007 WL 2713259, at *4 (E.D. La. Sept. 14, 2007).   Where, as here, a convicted inmate uncovers new evidence tending to prove his innocence, his recourse is to seek executive clemency, not federal *habeas corpus* relief.   Herrera, 506 U.S. at 417.

<u>Ineffective Assistance Claim</u>

Lastly, petitioner claims that he received ineffective assistance of counsel.   The United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.   A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.   Strickland v. Washington, 466 U.S. 668, 697 (1984).   A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."   Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).   If a court finds that a petitioner has made an insufficient showing as to either of the two

prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

Here, petitioner claims that his counsel was ineffective for failing to locate the two newly discovered eyewitnesses, Jane Marie Lewis and Percy Gray.  However, that claim is effectively foreclosed by the United States Fifth Circuit Court of Appeals' decision in this matter. In order to grant petitioner's motion to file this successive *habeas corpus* application, the Fifth Circuit was required to find that he could not have previously discovered the existence of Lewis and Gray through the exercise of due diligence.  The Fifth Circuit in fact made such a finding, holding:

> Rollins's newly-discovered evidence consists of Lewis and Gray's testimony regarding the shooting.  Our first inquiry under § 2244(b)(2)(B) is whether Rollins has established a *prima facie* case that he could not have previously discovered this evidence through the exercise of due diligence.  We find that he has.  Under the unique facts of this case, even the police, with presumably more investigatory resources and training than Rollins and his counsel, could not locate these two witnesses despite the fact that they lived directly in front of the crime scene and were in a crime-scene photograph that the police had in their possession.  The police report explicitly said that police had tried to locate additional eyewitnesses "to no avail."  There is no indication that the police did not exercise due diligence in their investigation.  And absent evidence to the contrary, we will not assume that police investigators did not exercise due diligence.[22]

That same logic, which worked in petitioner's favor with respect to his motion, now dooms his underlying claim.  Again, if it was not possible for the police to locate Lewis and Gray under these circumstances, then there is simply no reason to believe that it would have been possible for petitioner's counsel to do so.  Therefore, counsel's failure in this respect cannot constitute ineffective assistance.  See, e.g., United States v. Cronic, 466 U.S. 648, 656 n.19 (1984) ("[T]he Sixth Amendment does not require that counsel do what is impossible ...."); Franklin v. Thompson,

---

[22] *In re* Rollins, No. 09-30837, 2010 WL 2465090, at *3 (5th Cir. June 11, 2010).

– 14 –

Civ. Action No. 07-543, 2007 WL 3046642, at *11 (E.D. La. Oct. 17, 2007) ("Counsel cannot be considered ineffective for failing to accomplish the impossible.").  Accordingly, petitioner's claim necessarily fails.

### RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition of **Sylvester Rollins** for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[23]

New Orleans, Louisiana, this third day of January, 2011.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[23] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.